Robert Ottinger
Christopher Q. Davis
Denise Rubin Glatter
THE OTTINGER FIRM, P.C.
19 Fulton Street, Suite 408
New York, New York 10038
(212) 571-2000
*Attorneys for Plaintiffs*

M. Kirby C. Wilcox
Allan S. Bloom
Emily R. Pidot
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VINCENT BARDOUILLE, VINCENT GUARINO, ANGELA MCCAIN, MICHAEL THORGERSEN, and STEVEN SCADUTO, individually and on behalf all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>GOLDMAN SACHS & CO., and GOLDMAN SACHS GROUP, INC.,<br><br>                Defendants. | ECF CASE<br><br>Case No. 10-CV-4285 (WHP) (HBP) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CERTIFCATION OF THE SETTLEMENT CLASS, FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF THE**
**FLSA SETTLEMENT**

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................................1

**BACKGROUND** ....................................................................................................................2

    I.     PROCEDURAL HISTORY ............................................................................2

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION** .........................4

    I.     THE SETTLEMENT FUND ........................................................................4

    II.    RELEASES ...................................................................................................4

    III.   ELIGIBLE EMPLOYEES ............................................................................5

    IV.   ALLOCATION FORMULA ..........................................................................6

    V.    CLASS COUNSEL'S FEES AND LITIGATION EXPENSES................................6

    VI.   SERVICE AWARDS.....................................................................................7

    VII.  SETTLEMENT CLAIMS ADMINISTRATOR............................................7

**ARGUMENT**.........................................................................................................................8

    I.     THE SETTLEMENT MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION.........................................................................................8

        A.  NUMEROSITY.........................................................................................8

        B.  COMMONALITY IS MET.......................................................................9

        C.  TYPICALITY ..........................................................................................10

        D.  ADEQUACY OF THE NAMED PLAINTIFF .......................................11

        E.  CERTIFICATION IS PROPER UNDER RULE 23(b)(3)......................12

1.   COMMON QUESTIONS PREDOMINATE ............................................... 12

2.   A CLASS ACTION IS A SUPERIOR MECHANISM ............................... 13

II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS .................... 15

A.   THE PROPOSED SETTLEMENTS ARE PROCEDURALLY FAIR ................. 15

B.   THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR ........................ 16

1.   LITIGATION THROUGH TRIAL WOULD BE COMPLEX,
COSTLY AND LONG ................................................................. 17

2.   THE REACTION OF THE CLASS HAS BEEN POSITIVE ..................... 18

3.   DISCOVERY HAS ADVANCED FAR ENOUGH TO ALLOW
THE PARTIES TO RESOLVE THE CASE RESPONSIBLY ................... 18

4.   PLAINTIFF WOULD FACE REAL RISKS OF ESTABLISHING
LIABILITY AND DAMAGES IF THE CASE PROCEEDED ................. 19

5.   ESTABLISHING A CLASS AND MAINTAINING IT THROUGH
TRIAL WOULD NOT BE SIMPLE ............................................. 21

6.   DEFENDANTS' ABILITY TO WITHSTAND A GREATER
JUDGMENT IS NOT CLEAR ..................................................... 21

7.   THE SETTLEMENT FUNDS ARE SUBSTANTIAL, EVEN IN
LIGHT OF THE BEST POSSIBLE RECOVERY AND THE
ATTENDANT RISKS OF LITIGATION ...................................... 22

III.   APPROVAL OF THE FLSA SETTLEMENTS IS APPROPRIATE UNDER
FEDERAL LAW ....................................................................................... 23

**CONCLUSION** ................................................................................................. 24

## TABLE OF CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ..............................................12, 13, 14

*Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85
 (S.D.N.Y. 2001) ....................................................................................................................23

*re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174
 (S.D.N.Y. 2000) .........................................................................................17, 19, 20, 22, 23

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423
 (E.D.N.Y. May 22, 1990)........................................................................................................22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................................15, 17, 22

*Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992)..........................................12

*Clark v. Ecolab*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010
 WL 1948198  (S.D.N.Y. May 11, 2010)....................................................9, 11, 13, 16, 17, 24

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ............................8, 9

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).........................10, 14, 15

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)........................................15, 16, 17

*Denney v. Deutsche Bank AG*, 443 F.3d 252, 270 (2d Cir. 2006) ...........................................8, 11

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080,
 (E.D.N.Y. May 29, 2007)......................................................................................................11

*re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
 2007 WL 2230177, (S.D.N.Y. July 27, 2007).......................................................................16

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005)..................9, 10, 11, 13, 23

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)..........................................9

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596
 (S.D.N.Y. Mar. 24, 2008)....................................................................................................7, 23

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968)..............................................................14

*Iglesias-Mendoza*, 239 F.R.D. at 370 ....................................................................................9, 10

*re Ira Haupt & Co.,* 304 F. Supp. at 934 (S.D.N.Y. 1969)............................................20

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986) ................9

*Khait v. Whirlpool Corp.*, No. 06 Civ 6381,  2010 WL 2025106 at
    (E.D.N.Y. Jan. 20, 2010) ......................................................................16, 17, 24

*Lenahan v. Sears, Roebuck & Co.*, No. 02 Civ. 45, 2006 WL 2085282,
    (D.N.J. July 10, 2006) ..........................................................................13

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982) ...............................24

*Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002)...................18

*Marisol A.*, 126 F.3d ................................................................................10

*Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005)................................13

*Mas v. Cumulus Media Partners Susquehanna Corp.*, Case No. C 10-01396
    (N.D. Cal. S.F. Div.)..........................................................................12

*McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005)............................................13

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) ...............................24

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG),
    2010 WL 2399328 (S.D.N.Y. Mar.  3, 2010).................................................19, 24

*Mohney v. Shelley's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270,
    2009 WL 5851465, at *4 (S.D.N.Y. March 31, 2009).........................................14

*Noble v. 93 University Place Corp.*, 224 F.R.D. 330,346 (S.D.N.Y.2004)....................................11

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. Of San Francisco*,
    688 F.2d 615, 628 (9th Cir. 1982)..........................................................22

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999)....................................................12

*re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).............................20, 22

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
    698 F.2d 150, 153-54 (2d Cir. 1983)..........................................................9

*Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009
    (S.D.N.Y. Jan. 6, 2010) ......................................................................16

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31
(E.D.N.Y. 2006) ...........................................................................................................8

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ............................................10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) ..........................12

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587(PKL)(RL),
2003 WL 21136726, (S.D.N.Y. May 15, 2003) ...................................................18

*Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937,
(S.D.N.Y. June 7, 2005) ...............................................................................15, 21

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 0720, 2008 WL 7630102
(W.D.N.Y. Jun. 28, 2008) .............................................................................7

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957 .......................23

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455,
(S.D.N.Y. Sept. 28, 2007) ...........................................................................11

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783,
(S.D.N.Y. June 25, 2007) .............................................................................20

*re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) .........13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ...........15, 16

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862,
(E.D.N.Y. Feb. 18, 2011) .............................................................................7

*Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)..............................18, 19

## INTRODUCTION

The parties' settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs[1] submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(e), and Approval of FLSA Settlement ("Plaintiffs' Motion for Final Approval").  Plaintiffs seek an order (1) granting final certification of the settlement classes described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the *CORRECTED* SETTLEMENT AGREEMENT (the "Settlement Agreement")[2] attached as Exhibit A to the Davis Declaration in support of Final Approval) between Plaintiffs and Goldman Sachs & Co. and Goldman Sachs Group, Inc. (collectively, "Goldman" or Defendants) (the "Settlement Agreement"); and (3) approving the FLSA Settlement.

On September 2, 2011, the Court granted preliminary approval of the proposed settlement, provisional certification of the settlement classes, appointment of Plaintiff's counsel as Class Counsel, approval of Plaintiff's Notice of Settlements and Class Action Settlement Procedure, and scheduled a final approval hearing.  (DE-137).  Support for the settlements has been substantial: out of seventy-nine (79) potential Class Members (as defined below), forty-one (41) Class Members returned claim forms, no Class Member filed an objection, and only four (4) Class Members opted out.  (Decl. of Stacy Roe Re: Settlement Administration ("Roe Decl.") ¶¶ 6, 11-12), attached to the Davis Decl. as Ex. C)  The members of the class have been notified of the terms of the settlements and their proposed relief, the allocation formula, the need to submit a

---

[1]	The Named Plaintiffs are Vincent Bardouille, Vincent Guarino, Angela McCain, and Michael Thorgersen, and the Opt-In Plaintiffs are Irene Chieco, Victor A. Elumogo, Eleftherios N. Kavourgias, Bill Kontogiannis, Greg Meskouris, Cara Saiff, Linda Schlinger, and Man-Yip Yan (collectively, "Plaintiffs").

[2]	The Settlement Agreement – and all referenced Exhibits – are attached to the Declaration of Christopher Q. Davis in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement, dated January 10, 2012 ("Davis Decl.").

Claim Form, and their right to opt out of or object to the settlements.  (Ex. C ¶ 8) & (Ex. B, Class Notice.)  In light of the strong support for the settlements, and for the reasons stated below, the Court should grant final approval as requested.

**BACKGROUND**

I.     **Procedural History**

On May 27, 2010, Named Plaintiffs commenced this Action against Defendants as a "hybrid collective and class action" on behalf of themselves and others similarly situated under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"); the New York Labor Law, Ch. 31 of the Consolidated Laws of New York; and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-4.1 *et seq.*, all as amended.  (DE-1; Davis Decl. ¶ 6.)  Each of the Plaintiffs is a former New York and/or New Jersey employee of vendors who supplied staffing to Defendants' Technology Infrastructure organization at relevant times within the Class Period.  (DE-1; Davis Decl. ¶¶ 4-6.)  The Named Plaintiffs allege that they and similarly situated individuals were denied overtime wages in violation of the above-mentioned federal, New York, and New Jersey laws, and that Defendants are responsible for such overtime wages.

The Complaint seeks, *inter alia*, certification of this Action as a "collective action" under the FLSA and as a "class action" under Federal Rule of Civil Procedure ("FRCP") 23 and state law, and seeks compensatory damages, liquidated damages, interest, penalties, injunctive relief, and reasonable attorneys' fees and costs.   On July 16, 2010, Defendants filed their Answer disputing the material allegations in the Complaint and denying any liability in the class and collective action.  (DE-19; Davis Decl. ¶ 7.)

On or about September 30, 2010, Defendants filed a Third Party Complaint(DE-28) against fifteen Third Party Defendants—the vendors that supplied the Plaintiffs and other individuals in the proposed settlement class to Defendants.  Some of the Third Party Defendants

filed answers to the Third Party Complaint; others sought leave to move to dismiss the claims against them, and many have been subject to voluntary dismissal of the allegations against them (DE-146-153).

After substantial discovery, including: (1) the exchange of thousands of documents; (2) fifteen (15) depositions of Plaintiffs and of representatives of Defendants; (3) thorough investigation by Class Counsel and the Named Plaintiffs; and (4) mediation and extensive negotiations, the Parties entered into the proposed Settlement Agreement. (Davis Decl. ¶ 11). The Settlement Agreement provides for payment by Defendants to the Class Members, Class Counsel, and the Settlement Administrator, in the total amount of $993,841.00. (Davis Decl. ¶ 15).

The Parties reached the Settlement Agreement after an arm's-length mediation held in March 2011 at JAMS New York office with Linda Singer, an experienced wage and hour class action mediator. The Settlement Agreement resolves all claims alleged in the Complaint, provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for preliminary approval. (Davis Decl. ¶¶13-14).

On August 1, 2011, the parties jointly moved for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed notice of settlements. ((DE-130-135; Davis Decl. ¶ 19.) After the parties corrected their initial submission, including correcting the number of members of the class, the Court granted the parties' joint motion and approved a revised version of the Class Notice on September 2, 2011. (DE-137; Davis Decl. ¶ 20.)

The Claims Administrator mailed the Class Notices to Class Members on November 2, 2011. (Ex. C ¶ 8.) Pursuant to the terms of the Settlement Agreement, the Claims Administrator took reasonable steps to find the correct address for any Class Member whose notice was

returned and attempted multiple re-mailings for returned Notices. (Ex. C ¶¶ 9-10.  Out of a class

of approximately 79 current and former employees of vendors who supplied staffing to

Defendants' Technology Infrastructure organization, forty-one (41) returned claim forms, no one

has objected, and only four (4) have opted out of the Settlement by submitted an Exclusion

Form.  (Ex. C ¶¶ 11-13.)

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION**

**I.      The Settlement Fund**

The total settlement amount is $993,841.00.  The Settlement Payment will be allocated

to, and inclusive of, all payments to Claimants (*i.e.,* those Class Members who have "opted in" to

the settlement by submitting a timely and valid Claim Form pursuant to the Settlement

Agreement); tax deductions and withholdings made in accordance with the Settlement

Agreement; Enhancement Payments to specified Class Members; Class Counsel's attorneys' fees

and expenses; and the Settlement Administrator's fees.  (Ex. A ¶ 28)

No portion of the Settlement Payment reverts to Defendants.  ( Ex. A ¶ 31(b)(4)).

**II.     Releases**

The Settlement Agreement contains a narrow and limited release by Participating Class

Members (*i.e.,* those Class Members who do not "opt out" of the Settlement) of federal, state, and

local wage and hour claims (including those arising under the FLSA, the New York Labor Law,

and the New Jersey Wage and Hour Law) in favor of Defendants and the vendor(s) that supplied

the respective Participating Class Members to Goldman Sachs (and such releasees' related and

affiliated persons and entities). (Ex. A ¶ 44).  The Settlement Agreement contains a general

release of claims by those Plaintiffs who receive Enhancement Payments. *Id.* ¶ 45.  In addition,

all checks issued to Claimants will contain, on the back of the check, the following limited

endorsement:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to 90 days from the date I was mailed this Settlement Check to sign and cash this Settlement Check.

I understand that I have consented to join in the case entitled *Vincent Bardouille, et al. v. Goldman, Sachs & Co., et al.*, No. 10 Civ. 4285 (WHP) (HBP), now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I might have for overtime pay, or any other claim for violations of the Federal or state wage and hour laws alleged by Plaintiffs in the Complaint in this Action.

(Ex. A ¶ 34).

Under the Settlement Agreement, Class Members who "opt out" release no claims, and are not eligible for any share of the settlement proceeds. *Id.* ¶ 41. Class Members who do not "opt out" but do not "opt in" are among the Participating Class Members who are bound to the limited release of wage and hour claims described above. The release was negotiated and drafted so that it would *not* release other claims that the Participating Class Members (other than those who receive Enhancement Payments) might have arising from their assignment to work at Goldman Sachs.  (Ex. A ¶¶ 41, 44-45).

## III.   **Eligible Employees**

As stated above, the Class Members are the 79 individuals identified on Exhibit B of the Settlement Agreement, whom the Parties have determined in good faith and based on available records, worked overtime hours during the Class Period for which they did not receive overtime pay, and who most closely fit the proposed class definition from the Complaint of "[a]ll persons . . . paid on an hourly basis and contracted through an independent agency to work in [Defendants'] Technology Division, including, but, not limited to, Network Technicians and IT Consultants, at any point during" the Class Period.  The Class Period is the period beginning May 29, 2004, through and including the date on which the Court gives final approval to the Settlement. (Ex. A ¶ 7).  Since four (4) individuals opted out of the Settlement by submitting Exclusion Forms, the size of the class in now 75.  (Ex. C ¶¶ 11, 15).

## IV.    Allocation Formula

Each Class Member who "opts in" to the settlement (*i.e.,* each Claimant) will be entitled to a portion of the Net Settlement Payment pursuant to the following allocation formula: The parties have determined in good faith the number of overtime hours worked by each Class Member from May 29, 2004 through January 31, 2011 (based on hours and pay records provided by the vendors that employed the Class Members and by Defendants, and where such data was inconclusive in part, based on reasonable extrapolation from such existing data) for which the Class Member did not receive overtime pay at the proper rate.  (Ex. A ¶ 31(b)).  The Parties will attribute each Class Member one unit for each such hour. Once all such units are calculated for all Class Members, each Class Member's individual percentage of the total number of all Class Members' units will be determined. (For example, if the total number of all Class Members' units is 1000 and a particular Class Member is attributed 50 units in accordance with this section, his or her individual percentage will be five percent (5%).) Once all Class Members' individual percentages are calculated, each Class Member's individual percentage will be multiplied by the Net Settlement Payment to arrive the individual Settlement Share that he or she will be eligible to receive.  (Ex. A ¶ 31(b)).  If fewer than all Class Members qualify as Claimants, the Net Settlement Payment will be distributed among the Claimants in proportion to their respective units (as a percentage of all Claimants' units). (Ex. A ¶31(b)).  The Net Settlement Payment is the portion of the total Settlement Payment remaining after the payment of the Enhancement Payments to certain Class Members, Class Counsel's awarded fees and expenses, amounts withheld for tax purposes, and the Settlement Administrator's fees and expenses.  (Ex. A ¶13).

## V.    Class Counsel's Fees and Litigation Expenses

Consistent with the Settlement Agreement, Plaintiffs' counsel filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses simultaneously with this Motion,

seeking reimbursement from the Funds for their actual litigation costs and 33.3 percent of the Funds as attorneys' fees.[3]  Defendants will not oppose such application. *Id.* at ¶ 29.

## VI.    Service Awards (in the form of Enhancement Payments)

In addition to their individualized awards under the allocation formula, Class Counsel concurrently apply for five Enhancement Payments in the sum of $20,000 each for certain Plaintiffs in recognition of the services these Plaintiffs rendered on behalf of the Class: Vincent Bardouille, Vincent Guarino, Angela McCain, Irene Chieco, and Michael Thorgersen.

These Plaintiffs have served the class by assisting with the preparation of the complaints, the factual investigation of claims, the drafting and executing of declarations, participating in the mediation process, and shouldering the risks incurred as Named Plaintiffs.  (Davis Decl. ¶ 12.) Service Awards of this type are commonly awarded in complex wage and hour litigation.[4] Defendants will not oppose Plaintiffs' application for Enhancement Payments. (Ex. A. at ¶ 30).

## VII.   Settlement Claims Administrator

The Parties used Rust Consulting, Inc. as the Claims Administrator.  (Ex. C)  The Claims Administrator is responsible for the mailing of Notices to Class Members in accordance with this Court's Order, calculating the Settlement Checks, the claims administration process, and distribution of Settlement Checks to Class Members.  (Ex. C ¶3).

---

[3]      Attorneys' fees in this range are commonly awarded for complex litigations of this type. *See, e.g., Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the Fund is reasonable and consistent with the norms of class litigation in this circuit." (internal quotations and citation omitted)); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 0720, 2008 WL 7630102, at *3 (W.D.N.Y. Jun. 28, 2008) (holding that a fee award of "33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ("[C]lass counsel is entitled to one-third of the common fund after deduction of legal costs, which is consistent with the norms of class litigation in this circuit.").

[4] *See Willix*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.")

**ARGUMENT**

I.    **The Settlement Class Meets the Legal Standard for Class Certification**

When faced with a proposed class settlement, courts first examine whether the settlement

class is certifiable.  *Denney v. Deutsche Bank AG*, 443 F.3d 252, 270 (2d Cir. 2006).  On

September 2, 2011, the Court provisionally certified the settlement class.  (DE-137.)  The Court

should now grant final certification because all of the certification requirements are met and

there is no opposition to certification for settlement purposes.  For the purpose of effectuating the

settlement, the parties seek certification as a class of the seventy-five (75) individuals who have

not opted out the original class of seventy-nine (79) individuals on Exhibit B of the Settlement

Agreement.

The proposed class satisfies the requirements under Federal Rule of Civil Procedure 23(a)

and at least one of the subsections of Rule 23(b).  Rule 23(a) requires numerosity, commonality,

typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the

Court to find that:

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez*

*v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted).

A.    **Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon*, 150 F.3d at 1019. "[N]umerosity is

presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

483 (2d Cir. 1995).  Here, Plaintiffs easily satisfy the numerosity requirement because there are approximately seventy-five (75) Class Members.  (Ex. C  15.)

### B. Commonality is Met

The Class satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983)).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).

This case satisfied commonality because each Class Member performed services for Defendants, was paid on an hourly basis, and was contracted through an independent third-party vendor to work in Defendants' Technology Infrastructure organization. Each Class Member worked overtime hours for which he or she claims not to have been properly paid.  (DE-1; Davis Decl. ¶¶ 4-6.).  The facts, law, course of events and legal arguments are, thus, common to, and typical of, each Class Member.  *See Clark*, 2009 WL 6615729 at *4 (provisionally certifying a class where the plaintiffs alleged that defendant violated wage and hour laws by failing to pay overtime premium pay, and by failing to keep accurate records of time worked.); *Iglesias-Mendoza*, 239 F.R.D. at 370 (certifying class where "factual questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions"

were common and typical of all proposed class members, each of whom "would rely on the same allegedly wrongful conduct of the defendants and muster the same legal arguments[.]")

      **C.**    <u>**Typicality**</u>

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of Class Members' claims. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). Each Class Member performed services for Defendants, was paid on an hourly basis, and was contracted through an independent third-party vendor to work in Defendants' Technology Infrastructure organization in New York and/or New Jersey. Each Class Member worked overtime hours for which he or she claims not to have been properly paid. (Davis Decl. ¶¶ 4-6). Because the Named Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, the Named Plaintiffs satisfy the typicality requirement. *See Diaz*, 2010 WL 5507912, at *2 ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims."); *Clark*, 2009 WL 6615729, at *5 (same); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where "all class members . . . allege that Kodak failed to pay

them . . . overtime wages for hours worked in excess of forty per week during the relevant time period").

**D.**     **Adequacy of the Named Plaintiff**

The Named Plaintiffs also meet the adequacy requirement. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citation omitted) (internal quotation marks omitted). There is no evidence or indication that the Named Plaintiffs have interests that are antagonistic to or at odds with Class Members' interests. *See Diaz*, 2010 WL 2945556, at *2 (finding adequacy satisfied where Plaintiff's interests were not antagonistic or at odds with class members' interests); *Clark*, 2009 WL 6615729, at *5 (same).

Class Counsel also meets the adequacy requirement, because of Class Counsel's "experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing the class . . . ." *Spicer*, 269 F.R.D. at 337-38 (citing *Noble v. 93 University Place Corp.*, 224 F.R.D. 330,346 (S.D.N.Y.2004)). Class Counsel specializes in litigating employment disputes, particularly on behalf of employees, and is experienced in representing classes in such disputes. For example, Class Counsel just recently was appointed as co-class counsel in *Dorn*, *supra*, "because [it met] all of the requirements of Federal Rule of Civil Procedure 23(g)." 2011 WL 382200 at*3

11

(alleging violations of labor laws based on, *inter alia*, the defendants' failure to make overtime payments). Class Counsel also currently represents the named plaintiffs in *Mas v. Cumulus Media Partners Susquehanna Corp.*, Case No. C 10-01396 (N.D. Cal. S.F. Div.), in which a motion for preliminary approval of class action settlement is imminent. (Davis Decl. ¶ 27-28.)

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Certification under Rule 23(b)(3) allows Class Members to opt out of the settlements and preserve their right to seek damages independently.[5] *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects Class Members' due process rights and is consistent with the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, which explains that due process requires an opportunity to opt out of significant monetary relief. 527 U.S. 815, 846-48 (1999).

### 1.    Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted). The essential inquiry is whether "liability can be

---

[5] Four Class Members have exercised their right to opt out of the settlements. (Roe Decl. ¶ 11.)

determined on a class-wide basis, even when there are some individualized damage issues."
*Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d at 139).  The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.
*McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all Class Members are unified by common factual allegations and a common legal theory – that Defendants violated federal and state wage and hour laws by failing to pay them for overtime hours worked – which predominates over any factual or legal variations among Class Members.  *See Clark*, 2009 WL 6615729, at *5 (finding common factual allegations and common legal theory to predominate over factual and legal variations among class members in wage and hour misclassification case).

The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement.  *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis); *Lenahan v. Sears, Roebuck & Co.*, No. 02 Civ. 45, 2006 WL 2085282, at *7 (D.N.J. July 10, 2006) (same).  Plaintiff thus satisfies the predominance requirement.

## 2.   A Class Action is a Superior Mechanism

Plaintiff also satisfies the superiority requirement.  The second part of the Rule 23(b)(3) inquiry requires the Court to examine whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*,

406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant

factors, including the class members' interests in individually controlling the prosecution or

defense of separate actions; whether individual class members wish to bring, or have already

brought, individual actions; and the desirability of concentrating the litigation of the claims in the

particular forum.  Fed. R. Civ. P. 23(b)(3).[6]

Class adjudication of this case is superior to individual adjudication because it will

conserve judicial resources and is more efficient for Class Members, particularly those who lack

the resources to bring their claims individually.  *See Mohney v. Shelley's Prime Steak, Stone

Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *4 (S.D.N.Y. March 31, 2009);

*Damassia*, 250 F.R.D. at 161, 164; *see also Amchem*, 521 U.S. at 617 ("The policy at the very

core of the class action mechanism is to overcome the problem that small recoveries do not

provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Here, Plaintiff and the Class Members have limited financial resources with which to prosecute

individual actions, and Class Counsel is unaware of any pending individual lawsuits filed by

Class Members arising from the same allegations.  (Davis Decl. ¶ 9.)  Regarding the forum,

concentrating the litigation in this Court is desirable because all of the allegedly wrongful

conduct occurred within the jurisdiction of this Court.

Employing the class device here will not only achieve economies of scale for Class

Members, but will also conserve the resources of the judicial system and preserve public

confidence in the integrity of the system by avoiding the waste and delay of repetitive

proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Damassia*,

---

[6]     Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620
("[c]onfronted with a request for settlement-only class certification, a [trial] court need not
inquire whether the case, if tried, would present intractable management problems, for the
proposal is that there be no trial.

250 F.R.D. at 161, 164.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiff's and Class Members' claims.

## II.   The Proposed Settlement is Fair, Reasonable and Adequate and Should Be Approved in All Respects

Rule 23(e) requires court approval of a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a settlement is substantively fair, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").  Here, procedural and substantive considerations support approving the proposed settlement.

### A.   The Proposed Settlements Are Procedurally Fair

The proposed settlements are procedurally fair because they were reached through arm's-length negotiations after experienced counsel had conducted substantial discovery, allowing them to evaluate the merits of Plaintiffs' claims.  *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,  2010 WL 2025106 at *5 (E.D.N.Y. Jan. 20, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009 at *4 (S.D.N.Y. Jan. 6, 2010).  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlements were reached after Plaintiff had conducted a thorough investigation, evaluated the claims, and negotiated extensively with Defendants.  Plaintiffs obtained pay and time records that would enable them to perform accurate damages calculations.  (Davis Decl. ¶¶ 9, 11.)  Plaintiffs were able to extrapolate to perform damages calculations based on the records Defendants were able to provide.  (*Id.* ¶ 18.)  Plaintiffs' counsel interviewed Plaintiffs and numerous potential Class Members.  (*Id.*. ¶¶ 10-11).  From these sources, Plaintiff's counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims.

Plaintiffs and the Defendants attended a full day of mediation on March 21, 2011 with Linda R. Singer, Esq., a well-known and experienced employment mediator.  (*Id.* ¶13.)  At the mediation, the Parties agreed on a framework for resolving Plaintiffs' claims against the Defendants.  (*Id.* ¶ 13.)  After more negotiation, Plaintiffs and the Defendants reached agreement on all terms and signed a settlement agreement on in July 2011.  (*Id.* ¶13.)  At all times during the litigation and the settlement process, the parties negotiated on an arm's-length basis.  (*Id.* ¶ 14.)  These arm's-length negotiations involving counsel and a mediator well-versed in wage and hour law create a presumption that the settlement they achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark v. Ecolab*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 at *5 (S.D.N.Y. May 11, 2010).

**B.**      **The Proposed Settlement is Substantively Fair**

The Second Circuit in *City of Detroit v. Grinnell Corp.* provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d 448 (2d Cir. 1974).  The "*Grinnell* factors" guide district courts in this determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

1.   **Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*; *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 79 Class Members and claims under federal and state law.

Although the parties have already undertaken considerable expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.  Additional discovery would be required to establish liability and damages, including testimony from Class Members and Defendants' managers and corporate representatives, the exchange of volumes of documentary evidence, and further rounds of motion practice.  Preparing

and putting on such evidence at trial would consume tremendous amounts of time and demand

substantial judicial resources.  Even on a representative basis, a trial on damages would be costly

and would further defer closure.  Any judgment would likely be appealed, thereby extending the

duration of the litigation.  This settlement, on the other hand, makes monetary relief available to

Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in

favor of final approval.

> ### 2.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

The reaction of the class to a class action settlement is a "significant factor to be weighed

in considering its adequacy."  *Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63

(S.D.N.Y. 2002).  A lack of class member objections "may itself be taken as evidencing the

fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94 Civ.

5587(PKL)(RL), 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notices sent to Class Members included estimates of how much each Class

Member would receive based on his or her dates of employment.   (Ex. B, Schedule A)  The

Class Notice also informed Class Members that they could object to or exclude themselves from

the settlement and explained how to do so   (Ex. B ¶¶ II.F, II.H).  Forty-one (41) Class Members

returned Claim Forms, only four (4) Class Members requested exclusion from the settlement,

and no Class Member out of seventy-nine (79) objected.  (Ex. C ¶¶ 11-12.)  This response

demonstrates strong support for the settlement.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45

(S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and three

opted out, noting that "[t]he fact that the vast majority of class members neither objected nor

opted out is a strong indication" of fairness).

> ### 3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require many more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328 at *5 (S.D.N.Y. Mar.  3, 2010) (citation omitted).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (quotation marks omitted).

The parties' discovery here meets this standard.  Plaintiff's counsel interviewed Plaintiffs and numerous other potential Class Members.  The Parties exchanged documents and took numerous depositions.  .  (Davis Decl. ¶¶ 9-11.)  Class Counsel, with the assistance of the Plaintiffs, conducted a thorough investigation of Plaintiffs' claims and the facts underlying them both prior to and after the filing of the Complaint.  (*Id.*).  Plainly, the formal discovery and less formal, but quite substantial, due diligence of Plaintiffs and Class Counsel constitute more than "sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the Settlement." *See Austrian and German Bank*,80 F. Supp. 2d at 175 (approving settlement in the absence of formal discovery where extensive informal investigation occurred).

The parties also engaged in a day-long mediation facilitated by an experienced mediator during which they advocated their positions and engaged in vigorous back and forth regarding their respective claims and defenses.  This discovery and the mediation allowed the parties to evaluate adequately the strengths and weaknesses of the case.  The third *Grinnell* factor thus weighs in favor of final approval.

### 4.  Plaintiff Would Face Real Risks of Establishing Liability and Damages if the Case Proceeded (*Grinnell* Factors 4 and 5)

The risks of establishing liability and damages further weigh in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. at 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiff as to both liability and damages. Proving liability under the FLSA and NYLL requires a fact-intensive inquiry, and the defenses available to Defendants would pose substantial risk as to both liability and damages. Even if Plaintiff prevailed on liability, the extent of the Class Members' damages remains largely unexplored. Ultimately, this issue would have to be resolved at trial. Both affirmative defenses and both phases of litigation pose significant risks for Plaintiff.

To prove both liability and damages, Plaintiffs would have to put forth voluminous evidence that members of the Class worked in excess of those recorded by Defendants and for which they were not paid. To establish Defendants' liability, Plaintiffs would have to further prove that Defendants jointly employed each of them and the other members of the Class along with the third-party vendors that supplied the Class Members to Goldman Sachs.

While Plaintiffs believe their claims are strong, their counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in outcome and duration. The proposed settlement alleviates this uncertainty. These factors weigh heavily in favor of final approval.

### 5.   Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. Plaintiff has not yet filed a Motion for Class Certification or a Motion for Conditional Certification.  Class Counsel and Plaintiffs anticipate that if the Settlement is not approved (which it should be), Defendants will vigorously oppose class certification. Such opposition would "subject[] Plaintiffs to considerably more risk than . . . unopposed certification . . . ordered for the sole purpose of . . .Settlement." *See AOL Time Warner*, 2006 WL 2789862 at *8. To be sure, a determination on class certification would be reached only after further discovery and intense, exhaustive briefing by both Parties. In opposing Class certification, Defendants likely would argue that the number and variety of individualized questions, the schedules of the Class, the number of hours worked, the differences among various worksites, and other similar questions preclude class certification. Defendants would also argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable.

Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

The $993,841.00 settlement is also fair, reasonable, and adequate.  Even if protracted litigation were to yield a judgment larger than the settlement amount, there is a real possibility that Defendants would not be able to pay it.  Although Defendants might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair." *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997)) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the

settlement is unreasonable or inadequate.").  Even if this factor weighed against approval of the

Settlement (which it does not), it cannot preclude approval of the proposed settlement because all

of the other *Grinnell* factors weigh in favor of the Settlement.

> **7.  The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Plaintiffs' counsel has determined that this case presents significant risks that militate

toward compromise.  Defendants have agreed to settle this case for a substantial amount,

$993,841.00.  (Ex. A ¶ 28)  This settlement amount represents a good value given the attendant

risks of litigation, even though recovery could be greater if Plaintiff succeeded on all claims at

trial and survived an appeal, and the Court should approve it.  "[T]here is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2

(2d Cir. 1974).  "It is well settled that a cash settlement amounting to only a fraction of the

potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for*

*Justice v. Civil Serv. Comm'n of City and Cnty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir.

1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y.

May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible

recovery would be approximately $121 million").

Plaintiffs' calculation of total damages for the class was virtually the same as the

Settlement Payment.   Relative to this estimate, Plaintiff believes that the almost $1 million

settlement amount represents a good recovery for the class in light of the risk that Plaintiffs

would not prevail on all claims.

The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam*, 2008 WL 782596 at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, at *5.

\*        \*        \*

In sum, all of the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlements.  Because the settlements are "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (citation omitted), the Court should grant final approval.

## III.    Approval of the FLSA Settlements Is Appropriate Under Federal Law

The Court should also approve the settlement of the FLSA claims.  Plaintiffs brought the FLSA claims as a collective action.  In a collective action, employees must affirmatively opt in to the litigation unlike in a Rule 23 class action, which includes all employees unless they opt out.  *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").  Because under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *See McMahon*, 2010 WL 2399328, at *6 ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); *Khait*, 2010 WL 2025106, at *6 (citing *McKenna v. Champion Int'l Corp.*, 747

F.2d 1211, 1213 (8th Cir. 1984)).  Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  See *Khait*, 2010 WL 2025106 at *7; *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Id.* at 1354; *Clark*, 2010 WL 1948198, at *7.

In this case, the settlements were the result of vigorously contested litigation and arm's-length negotiation.  (Davis Decl. ¶¶ 13-14.)  Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation with an experienced mediator and ultimately reached the settlement pending before the Court.  (*Id.*).  Throughout the litigation and negotiations, Plaintiff and Defendants were both represented by counsel.

Accordingly, , the Settlement Agreement will resolve a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and will therefore be appropriate for final approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) certify as final the Class described above; (2) approve as fair and adequate the class-wide settlements of this action, as set forth in the Settlement Agreement; and (3) approve the FLSA settlement.

24

Dated: January 10, 2012
      New York, New York

           **THE OTTINGER FIRM, P.C.**

           By:_____/s/_____
           Robert Ottinger
           Christopher Davis
           19 Fulton Street, Suite 408
           New York, New York 10038
           (212) 571-2000
           Attorneys for Plaintiffs and the Class